IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA DIANE GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:16-cv-0222-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Patricia Diane Garner, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB").[1] Plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was fifty-six years old at the time of the ALJ's decision, and she has a general education diploma ("GED"). (Tr. at 30, 240, 283.) Her past work

---

[1]    Plaintiff's claim was originally denied by the Administrative Law Judge ("ALJ") on May 4, 2012, but the Appeals Council remanded her case back to the ALJ. (Tr. at 136-37.) This appeal is from the ALJ's denial of benefits on remand.

includes employment as a forklift operator, punch press operator, and inspector packager. (Tr. at 58.) Plaintiff claims she became disabled on September 11, 2009, due to breast cancer. (Tr. at 282.) She later added depression, panic disorder, anxiety, dizziness, and severe pain as disabling conditions. (Tr. at 331, 350.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment

or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. (Tr. at 23.) The ALJ then found that Plaintiff had not engaged in SGA since the alleged onset of her disability. (*Id.*) The ALJ found Plaintiff's degenerative disc disease, anxiety, and depression "severe" based on the requirements set forth in the regulations. (Tr. at 23-24.) However, she found that these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24.) The ALJ did not find Plaintiff's allegations to be totally credible, and determined that Plaintiff has the following RFC:

[Plaintiff can] floor to knuckle lift fifteen pounds maximum and five pounds occasionally. She can knuckle to shoulder lift twenty pounds maximum and five pounds occasionally. She can carry fifteen pounds occasionally and push/pull fifteen pounds occasionally. [She] can constantly sit, stand[,] and walk with a sit/stand option every hour or so to change positions. She can frequently bend and squat and occasionally kneel and climb stairs. She cannot work around unprotected heights or dangerous machinery. She cannot climb ladders, ropes[,] or scaffolds. She can handle casual non-intensive interaction with co-workers and the general public. She can concentrate for two hours at a time to complete an eight-hour workday.

(Tr. at 25-27.)

By enlisting the help of a Vocational Expert ("VE"), the ALJ concluded that Plaintiff is able to perform her past relevant work as an inspector packager because it does not require the performance of work-related activities precluded by her RFC. (Tr. at 29.) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 11, 2009, through the date of this decision." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v.*

*Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for three reasons: the ALJ erred in determining her mental RFC, in her credibility determination, and in finding that her past work as an inspector packager qualified as SGA.

### A.    ALJ's mental RFC finding

Plaintiff argues that the ALJ's mental RFC finding, and in turn her hypothetical question to the VE, which stated in part that Plaintiff—or a hypothetical individual with Plaintiff's RFC—could "concentrate for two hours at a time to complete an eight-hour workday," fails to account for the ALJ's own finding at step two that Plaintiff has moderate deficiencies of concentration, persistence or pace.

The ALJ's finding at step two that Plaintiff is moderately limited in maintaining concentration, persistence, or pace was part of the psychiatric review technique form ("PRT form") that the ALJ was required to fill out in light of Plaintiff's alleged mental impairments. (Tr. at 25). *See* 20 C.F.R. § 404.1520a. PRT

findings are used to evaluate whether a claimant suffers from a severe impairment and whether she meets or equals a listing at step two, but they are distinct from findings regarding a claimant's RFC at steps four and five. *See id.*; SSR 96-8p, 1996 WL 374184, at *4. In fact, agency policy states that the mental RFC assessment should be more detailed than the PRT findings. *See* SSR 96-8p.

Indeed, an RFC is the most a claimant can still do despite the physical and mental limitations resulting from her impairments. *See* 20 C.F.R. § 404.1545(a); *Phillips*, 357 F.3d at 1238. The determination of RFC is an administrative assessment. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1-2. Specifically, the regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(a). Relevant medical and other evidence includes medical assessments, medical reports, and descriptions and observations of a claimant's limitations by the claimant and others. *See* 20 C.F.R. § 404.1545(a)(3).

One of the ways to determine whether a claimant can perform her past relevant work at step four is to enlist the testimony of a VE. *Phillips*, 357 F.3d at 1239–40. Importantly, "[i]n order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the

claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

Here, the ALJ's hypothetical question to the VE, which essentially incorporated the ALJ's RFC assessment, did not explicitly include the ALJ's finding at step two that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 105.) Relying upon *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), Plaintiff says the ALJ's failure in this regard is reversible error.

In *Winschel*, the Eleventh Circuit noted that it had never addressed in a published opinion whether a hypothetical question to a VE must specifically account for limitations in concentration, persistence or pace identified during the PRT. 631 F.3d at 1180. The court joined other circuits in holding that it must. *Id.* However, the court indicated that accounting for the PRT findings in the hypothetical question may be implicit rather than explicit. *Id.* For example, the court found that although the ALJ in that case found at step two that the plaintiff's mental impairments caused moderate limitations in maintaining concentration, persistence or pace, he "did not indicate that medical evidence suggested [the plaintiff's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." *Id.* at 1181. The court

thus held that because the ALJ failed to do either of these things, the ALJ "should have explicitly included the limitation in his hypothetical question to the [VE]," and because the hypothetical question failed to include or otherwise implicitly account for all of the plaintiff's impairments, the VE's testimony was not "substantial evidence" supporting the ALJ's conclusion that the plaintiff could perform significant numbers of jobs in the national economy. *Id.*

The ALJ here did what the ALJ in *Winschel* failed to do: she specifically "indicate[d] that medical evidence suggested [Plaintiff's] ability to work was unaffected by" Plaintiff's moderate limitations in maintaining concentration, persistence, or pace. *See id.* More specifically, while the ALJ found moderate limitations in concentration, persistence or pace when she made the PRT finding, the ALJ also identified several statements Plaintiff made that indicated she did not have significant difficulties with concentration or pace. (Tr. at 25). For instance, the ALJ noted Plaintiff reported that she could pay attention "as long as I need to" and she was able to finish what she started. (Tr. at 25, 305). The ALJ also considered that Plaintiff reported she was able to follow written and spoken instructions "fine," she was able to handle changes in routine, and she had adequate attention and concentration to pay bills, count change, handle a savings account, and use a checkbook. (Tr. at 25, 303-06). An ALJ may consider a

claimant's own description of her limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5 (identifying lay evidence as relevant to an RFC finding). Plaintiff's own statements do not indicate that she had any difficulties in concentrating or paying attention for two hour periods.

The ALJ also reasoned that the objective mental health evidence did not show severe functional limitations. (Tr. at 28). The ALJ noted the record showed no mental health treatment from a licensed psychologist until February 2014, two years after Plaintiff's disability claim was denied the first time. (Tr. at 28, 631-32). *See* SSR 96-8p, 1996 WL 374184, at *5 (identifying medical history as relevant to an RFC finding). The ALJ also noted that when Plaintiff did begin receiving treatment, Plaintiff had a positive response to medication. (Tr. at 28, 626-27, 641). *See id.* (identifying the effects of treatment as relevant to an RFC finding). The ALJ noted that Plaintiff reported that Xanax and Paxil were helping her anxiety and depression and Xanax was helping her to sleep. (Tr. at 28, 626, 641). The ALJ also considered that mental status examinations revealed no significant limitations in thought content, thought process, insight and judgment. (Tr. at 28, 626-27). Indeed, on examination, Plaintiff's appearance was appropriate, and she had logical thought processes, and normal thought content and behavior. (Tr. at 28, 626-27, 630, 641). Most often, sources described her insight and judgment as "good." (Tr.

at 28, 380, 626-27, 757). In sum, the ALJ's RFC finding included a narrative discussion of the medical evidence that supported her conclusion that Plaintiff could engage in casual contact with others and concentrate for two hour periods of time during a typical eight hour workday, despite her finding at step two of moderate limitations in maintaining concentration, persistence, or pace. (Tr. at 28). *See* SSR 96-8p, 1996 WL 374184, at * 7 (the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion).

Moreover, the VE identified Plaintiff's past work as an inspector packager as unskilled. (Tr. at 58). Unskilled work needs little or no judgment to do simple duties that can be learned on the job in a short period of time. *See* 20 C.F.R. § 404.1568(a). Unskilled work involves understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. *See* SSR 96-9p, 1996 WL 374185, at *9; SSR 85-15, 1985 WL 56857, at *4. Plaintiff's own statements regarding her mental functioning and the mental health evidence described above and considered by the ALJ support the conclusion that Plaintiff could perform the unskilled mental demands of her past work as an inspector packager.

### B. ALJ's credibility determination

In challenging the ALJ's credibility determination, Plaintiff argues only that the ALJ should have considered her "stellar" work history and thus found her testimony regarding her impairments credible. (Doc. 13 at 9.) Plaintiff emphasizes that she has worked for all but five of the 140 work quarters between 1976, when she was 18 years old, and the disability onset date in 2010. (Tr. at 242-43.)

As Plaintiff admits, credibility determinations are the province of the ALJ. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); *Wilson*, 284 F.3d at 1225-26. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); *Wilson*, 284 F.3d at 1225-26.

An ALJ is not required to accept a claimant's allegations of pain and/or symptoms. *Wilson*, 284 F.3d at 1225–26. However, the ALJ must "[explicitly

articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore*, 405 F.3d at 1212 n.4 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ may consider a claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication; treatment the claimant receives; any measures the claimant uses to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ's credibility determination need not refer to "every piece of evidence in his decision [regarding credibility], so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210-11. Further, when the reasoning for discrediting is explicit and supported with substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the ALJ's evaluation of Plaintiff's subjective complaints was in compliance with the above-cited regulatory criteria and Eleventh Circuit

precedent. (Tr. at 26-29.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. at 26). The ALJ then articulated several reasons for finding Plaintiff not entirely credible including the inconsistency of Plaintiff's statements with the objective examination findings, the conservative nature of her treatment, and her self-reported daily activities. (Tr. at 26-29.)

More specifically, the ALJ properly considered that the medical evidence in the record did not substantiate the alleged severity of Plaintiff's reported symptoms. (Tr. at 26-27). *See* 20 C.F.R. § 404.1529(c)(2) (the ALJ can consider the objective medical evidence among other factors). The ALJ observed that imaging of the lumbar spine indicated moderate degenerative disc disease and early osteoarthritis, but there was no evidence of fracture or significant stenosis. (Tr. at 26-27, 369, 466, 515, 566, 585, 746-47, 756). As to Plaintiff's complaints of dizziness (tr. at 44, 46), the ALJ observed that diagnostic imaging revealed no hemodynamically significant stenosis in the heart, no significant abnormalities in the brain, and no significant stenosis of the internal carotid arteries. (Tr. at 28, 544, 563-64). The ALJ considered that physical examinations showed Plaintiff had a non antalgic gait with improved lumbar range of motion after physical therapy and

normal range of motion in the thoracic and cervical spines. (Tr. at 27, 373-74, 376, 379, 505, 757). The ALJ also noted that consultative examiner David Hinger, M.S., observed that Plaintiff did not use a cane to walk and exhibited no limp. (Tr. at 27, 527). Plaintiff could also walk forward, backward, heel to toe, and balance on each leg. (Tr. at 27, 527). Further, as discussed in the previous issue, the ALJ considered the mental health examinations did not indicate significant limitations in thought content, thought process, insight or judgment. (Tr. at 28, 626-27, 630, 641, 757).

The ALJ also considered that Plaintiff received conservative treatment for her impairments in evaluating her subjective complaints. (Tr. at 27-28). *See* 20 C.F.R. § 404.1529(c)(3)(v); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (affirming ALJ's adverse credibility finding where ALJ reasoned, in part, that Plaintiff's treatment was conservative in nature). The ALJ noted Plaintiff's back pain was treated with medicine and physical therapy and she declined epidural steroid injections. (Tr. at 27, 377, 478, 513). Plaintiff reported physical therapy had been beneficial to her. (Tr. at 377, 513). *See Dyer*, 395 F.3d at 1210-11 (affirming ALJ's adverse credibility finding where doctors noted, and the plaintiff reported, that the plaintiff's condition had improved with treatment). The ALJ also noted treating sources did not deem her condition severe enough to warrant surgery. (Tr. at 27, 369-70). The ALJ also considered that when Plaintiff was offered a cane in

May 2011 she declined it. (Tr. at 27, 506). *See* 20 C.F.R. § 404.1529(c)(3) (vi) (permitting consideration of measures claimant uses to relieve pain). The ALJ observed Plaintiff did not exhibit any difficulty walking at a follow up visit. (Tr. at 27, 505). Finally, the ALJ also considered the record showed Plaintiff did not seek mental health treatment until February 2014 and there was no record of hospitalization for symptoms associated with a mental impairment. (Tr. at 28, 617-32, 641).

The ALJ also properly considered Plaintiff's daily activities when analyzing Plaintiff's RFC and credibility. (Tr. at 27). *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities when evaluating her subjective complaints). The ALJ considered that in a function report, Plaintiff reported no problems with personal care and she was able to do household chores such as vacuum, wash clothes, wash dishes, sweep floors, and prepare meals. (Tr. at 300-02). Plaintiff also reported that she shopped twice weekly for groceries and was able to pay bills and handle a savings account. (Tr. at 27, 300, 303-04). The ALJ also noted Plaintiff reported she enjoyed reading and visited with her sisters daily. (Tr. at 304)

Considering the foregoing, Plaintiff's argument that the ALJ should have also considered her work history in her credibility determination fails for several

reasons. First, the Commissioner's rulings and regulations do not require the ALJ to explicitly discuss a claimant's work history in evaluating the claimant's credibility. Notably, work history is not specifically listed as one of the seven factors in the agency's regulation regarding credibility findings, as stated above. *See* 20 C.F.R. § 404.1529(c); SSR 96-7p,[2] 1996 WL 374186, at \*3. While statements about a claimant's prior work record and efforts to work might be relevant, there is no *requirement* that the ALJ specifically discuss work history in her credibility analysis. *See* SSR 96-7p, 1996 WL 374186, at \*5 (listing statements regarding prior work record as an example of evidence that *could be* relevant to a claimant's credibility).

Second, this Court's standard of review prevents a finding of reversible error based on the ALJ's failure to also consider Plaintiff's work history in her credibility analysis. *See Phillips*, 357 F.3d at 1240 n. 8 ("We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. . . . If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.") (internal citations and quotation marks omitted); *Wilson*, 284 F.3d at 1226 (noting that it was enough to affirm that the "ALJ made a reasonable decision to reject [the claimant's]

---

[2]    SSR 16-3p superseded SSR 96-7p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1237954, at \*1.

subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

C.   **Past relevant work**

As noted, the ALJ enlisted a VE to help determine whether Plaintiff could perform her past relevant work, and the VE testified that she could perform her past work as an inspector packager as the job is generally performed. (Tr. at 62). Accordingly, the ALJ found Plaintiff could perform her past relevant work as an inspector packager. (Tr. at 29.)

Plaintiff argues that this was error because her work as an inspector packager never amounted to SGA. The claimant bears the burden of demonstrating that she cannot return to her past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). A claimant must prove she cannot perform her past work, either as she performed it or as generally performed in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv); SSR 82-61, 1982 WL 31387, at *1-2; *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). Work experience is relevant "when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was [SGA]." 20 C.F.R. § 404.1565(a). Work activity is considered SGA if it involves doing significant physical or mental activities for pay or profit. *See* 20 C.F.R. § 404.1572(a), (b). In 2002, when Plaintiff worked as an inspector packager,

earning above $780 per month constituted SGA. *See* POMS DI 10501.015B, 2001 WL 1931773. However, under the regulations, work may be SGA even if done on a part-time basis or if a profit is not realized. *See* 20 C.F.R. § 404.1572(a).

Plaintiff reported she worked at Rainsville Technology, Inc. ("Rainsville") as an inspector packager for approximately five months from November 2001 until April 2002. (Tr. at 292, 294). She also reported that she worked at Rainsville for 8 hours a day, 5 days a week, at $8.00 an hour. (Tr. at 294.) However, her earnings record reflects that she actually worked for Rainsville in part of 2002 and 2003, not 2001. (Tr. at 258-59). Her earnings record indicates a total income from Rainsville of $3,371.00 in 2002 and $55.53 in 2003. (Tr. at 258-59.)

Plaintiff argues that the Court should average the $3,371.00 total income she received from Rainsville in 2002 over the entire calendar year of 2002 to conclude that she was not engaged in SGA because she would have netted only approximately $281 per month, well below SGA levels for that year ($780 per month). She says "there is no evidence in this record to the contrary" that she worked for Rainsville for "the entire year in 2002."

Plaintiff's assertion is refuted by the record. Her earnings reports show that she also worked for National Refrigeration Company, Goody's Family Clothing, Inc., and Chattanooga Business Services, Inc., in 2002. (Tr. at 259, 262-63.)

Notably, Plaintiff earned a total of $20,552.71 in 2002. (Tr. at 254, 256, 271.) This breaks down to a monthly income of $1,712.72, well in excess of $780 in 2002. Given that Plaintiff worked for multiple employers in 2002, averaging the income she received from Rainsville over the entire calendar year is not an appropriate measure for determining whether Plaintiff's inspector packager work constitutes SGA. This is because the Commissioner only averages earnings over a period of work if the claimant's work as an employee was continuous without significant change. *See* 20 C.F.R. § 404.1574a(a).Taking into account that she had several different employers that year, it is reasonable to presume in light of her reported hourly wage ($8.00) and full time work week (8 hours per day 5 days per week) at Rainsville (tr. at 294) that she made in excess of $780 per month during the part of the year that she earned $3,371.00 from Rainsville, because 8 hours a day, 5 days per week at $8.00 per hour amounts to a weekly income of $320 and a monthly income of at least $1,280, which is well above the $780 threshold in 2002.

Additionally, her work at Rainsville constitutes SGA because she performed the job long enough to learn to do it. *See* 20 C.F.R. § 404.1565(a). Plaintiff reported working at Rainsville for about a five month period. (Tr. at 292). The inspector packager position is unskilled, and, thus, would only take about a month to learn to

perform. (Tr. at 58). *See* 20 C.F.R. § 404.1568(a) (unskilled work is work that can be learned in a short period of time).

Finally, even assuming solely for argument that Plaintiff's earnings at Rainsville were less than the level considered SGA, the amount of a claimant's reported earnings is not determinative of the SGA issue. The regulation states that work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than when she worked before. *See* 20 C.F.R. § 404.1572(a).

This Court finds no error in the ALJ's finding that Plaintiff's previous job as an inspector packager was past relevant work.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Garner's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 29, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704

22